UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

              Plaintiff,

    v.

SHARON KAY KILLEBREW,

              Defendant.

_____/

No. 1:25-CR-91

Hon. Hala Y. Jarbou
Chief U.S. District Court Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Sharon Kay Killebrew and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.    <u>Plea to Information.</u> Defendant gives up the right to Indictment by a grand jury and agrees to plead guilty to the Felony Information. Count 1 of the Felony Information charges Defendant with Conspiracy to Commit an Offense, in violation of Title 18, United States Code, Sections 371 and 666(a)(1)(A). Count 2 of the Felony Information charges Defendant with Tax Evasion, in violation of Title 26, United States Code, Section 7201.

2.    <u>Defendant Understands the Crimes.</u> In order for Defendant to be guilty of violating Count 1, the following must be true: (1) that two or more persons conspired, or agreed, to commit a crime; (2) Defendant knew of the conspiracy and its object; (3) Defendant voluntarily joined the conspiracy; and (4) one of the conspirators did one of the overt acts described in the Felony Information.

In order for Defendant to be guilty of violating Count 2, the following must be true: (1) Defendant had a tax due and owing; (2) Defendant made an affirmative attempt to evade or defeat the tax; and (3) Defendant acted willfully.

Defendant is pleading guilty because Defendant is guilty of the charges described above.

3.  <u>Defendant Understands the Penalties</u>.    The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is the following: 5 years of imprisonment, 3 years of supervised release, a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greater, and a mandatory special assessment of $100.

The statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7201, is the following: 5 years of imprisonment, 3 years of supervised release, a fine of $250,000, a mandatory special assessment of $100, and the costs of prosecution.

4.  <u>Assessment</u>. Defendant agrees to pay the special assessments on the day of sentencing.

5.  <u>Supervised Release Defined</u>.  Supervised release is a period of time following imprisonment during which Defendant will be subject to various restrictions and requirements.  Defendant understands that if she violates one or more of the conditions of any supervised release imposed, she may be returned to prison for all or part of the term of supervised release, which could result in the

Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6.    <u>Restitution and Payment of Taxes Owed.</u>

a.    Defendant agrees to pay full restitution to all victims, including the Internal Revenue Service, in an amount to be determined at sentencing. Defendant agrees that the restitution order is not restricted to the victims or conduct alleged in the Counts to which Defendant is pleading guilty and includes (1) all losses caused by Defendant and reasonably foreseeable losses caused by her Co-Conspirators; and (2) all losses caused by Defendant's failure to report personal and business income to the IRS for calendar years 2014 through 2022. The United States believes the total amount of restitution for the conduct alleged in Count 1 will be $1,170,935, and the total amount of restitution to the IRS for the conduct alleged in Count 2 will be $292,471. The Court will determine the final amount of restitution at sentencing. Defendant understands and agrees that the tax restitution amount, no matter how it is resolved, will not include interest under 26 U.S.C. § 6601, or penalties, which will be assessed by the IRS pursuant to Title 26.

b.    Defendant agrees that, however the restitution amount is resolved at sentencing, the total restitution amount will have resulted from Defendant's fraudulent conduct.

c.    Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, Defendant agrees that

the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

        d.      The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). Defendant does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor Defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment. Interest on the restitution-based assessment will accrue under 26 U.S.C. § 6601 from the last date prescribed for payment of the tax liability that is the subject of the restitution-based assessment to the date that the IRS receives full payment.

        e.      Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. Defendant understands and agrees that the plea agreement does not resolve the Defendant's civil tax liabilities, that the IRS may seek additional taxes, interest, and penalties from Defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise Defendant's obligation to pay any remaining civil tax liability. Defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

  f. Defendant understands that she is not entitled to credit with the IRS for any payment until the payment is received by the IRS.

  g. Defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS and the U.S. Attorney's Office any and all additional financial information and financial statements provided to the probation office.  Defendant also agrees to provide the above-described information to the U.S. Attorney's Office and the probation office.

  h. If Defendant makes a payment of the restitution agreed to in subparagraph (a) prior to sentencing, the payment will be applied as a credit against the restitution ordered.  If Defendant makes a payment of the restitution agreed to in subparagraph (a) prior to sentencing, Defendant agrees that she will sign IRS Form 870, Form 2504, or other appropriate form enabling the IRS to make an immediate assessment of the liability underlying the restitution agreed to in subparagraph (a).  Defendant agrees that she will not claim a refund of the payment or otherwise challenge the existence or amount of the tax liability underlying the restitution agreed to in subparagraph (a).  If the amount of restitution identified in subparagraph (a) has not already been reduced to account for any such payments, the government agrees that the amount of the restitution to be ordered by the court shall be reduced by a payment made in conformity with this provision.

  i. Defendant agrees to send all payments made pursuant to the Court's restitution order addressed to the Clerk of the Court, as follows:

U.S. District Court, Clerk's Office
399 Gerald R. Ford Federal Building
110 Michigan Street, NW
Grand Rapids, MI 49503

With each payment to the Clerk of the Court made pursuant to the District Court's

restitution Order, defendant will provide the following information:

   i.    Defendant's name and Social Security number;

   ii.   The District Court and the docket number assigned to

         this case;

   iii.  Tax year(s) or period(s) for which restitution has been

         ordered; and

   iv.   A statement that the payment is being submitted

         pursuant to the District Court's restitution order.

Defendant agrees to include a request that the Clerk of the Court send the

information, along with Defendant's payments, to the IRS address below:

IRS - RACS
Attn: Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108

Defendant understands and agrees that interest imposed by Title 26 will continue to

accrue until the payment is actually received by the IRS.  Defendant also agrees to

send a notice of any payments made pursuant to this agreement, including the

information listed in the previous paragraph, to the IRS at the preceding address.

         j.    Prior to sentencing, Defendant will file with the IRS Special

Agent assigned to this investigation true and correct personal returns for the years

6

2014-2019. Defendant agrees to provide the IRS, upon request, information regarding the years covered by the returns. Defendant further agrees to pay any additional amounts determined to be owing with respect to these returns because of any errors.

        k.     Defendant agrees not to file any claim for refund of taxes, penalties, or interest for amounts reported on the returns filed incident to this agreement.

        7.    <u>Factual Basis of Guilt</u>. Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

        a.  From at least 2016 through 2023, Defendant conspired with Co-Conspirator 1 to defraud the Early Learning Neighborhood Collaborative (ELNC) and donors to ELNC, including the U.S. Department of Health and Human Service's Early Head Start Program and other private donors. Defendant conspired to embezzle and convert to her own use and the use of others, including Co-Conspirator 1, $1,170,935 from ELNC.

        b.  As part of the conspiracy, Defendant generated fictitious invoices for goods and services never received by ELNC and submitted them for approval to Co-Conspirator 1. Co-Conspirator 1 approved the invoices on behalf of ELNC and payments were disbursed from ELNC to Defendant or her contracting business, Shared Blessings. Defendant kept a portion of the embezzled money for herself and sent a portion of

the embezzled money to Co-Conspirator 1 or other individuals and entities at Co-Conspirator 1's direction.

c.  As part of the conspiracy, Defendant concealed the embezzlement and theft of money by, among other things, not including the embezzled and stolen funds on IRS Form 1099s or IRS Form W-2s to herself and Co-Conspirator 1.  Defendant also concealed the embezzlement and theft of money from ELNC's Board of Directors and ELNC's donors.

d.  As part of the conspiracy, Defendant was aware that Co-Conspirator 1 caused ELNC to issue hundreds of thousands of dollars in payments to other individuals and companies who performed no work or services for ELNC or the preschools and programs it funded.  Defendant knew the payments were fraudulent and allowed the payments to be processed, and did not inform ELNC Board of Directors or ELNC's donors.

e.  On October 16, 2017, Defendant submitted a false work invoice to ELNC for payment of $45,000 to her company Shared Blessings, which falsely claimed she performed work under ELNC's Early Head Start contract.  Co-Conspirator 1 approved the false invoice for payment and Defendant's company Shared Blessings was subsequently paid $45,000 by ELNC for the false work invoice.  On October 23, 2017, Defendant wrote a check for $22,500, or half the $45,000 false work invoice, payable to Co-Conspirator 1.

f. On January 3, 2018, Defendant submitted a false work invoice to ELNC for payment of $45,000 to her company Shared Blessings which falsely claimed she performed work under ELNC's Early Head Start contract, and ELNC subsequently paid Shared Blessings for the false work invoice.  On January 11, 2018, Defendant wrote a check for $22,500, or half the $45,000 false work invoice, payable to Co-Conspirator 1.

g. On April 16, 2018, Defendant submitted a false work invoice to ELNC for payment of $129,000 in two payments of $64,500 to her company Shared Blessings which falsely claimed she performed work under one of ELNC's private grants. Co-Conspirator 1 approved the false invoice for payment. Defendant's company Shared Blessings subsequently received the two payments of $64,500 from ELNC.  On April 30, 2018, Defendant wrote a check payable for $64,500, or half the $129,000 false work invoice, to Co-Conspirator 1.

h. On April 28, 2019, Defendant submitted a false work invoice to ELNC for payment of $30,000 to her company Shared Blessings which falsely claimed she performed work under ELNC's Early Head Start contract and other contracts, and Shared Blessings was subsequently paid by ELNC for the false work invoice.  Between September 9, 2019, and September 16, 2019, Killebrew wrote three checks totaling $22,500 to Co-Conspirator 1.

i.  On March 31, 2020, Defendant submitted a false work invoice to ELNC for payment of $57,000 to her company Shared Blessing which falsely claimed she performed work under ELNC's contract for Technical Assistance for Social Change, and ELNC subsequently paid Shared Blessings for the false work invoice.  Between March 30, 2020, and April 4, 2020, Defendant wrote four checks totaling $28,500 to Co-Conspirator 1's limited liability company and another person at Co-Conspirator 1's direction.

j.  On August 20, 2020, Defendant submitted a false work invoice to ELNC for payment of $57,000 to her company Shared Blessings which falsely claimed she performed work under ELNC's contract for Technical Assistance for Social Change, and Defendant's company Shared Blessings was subsequently paid by ELNC for the false work invoice. On August 20, 2020, Defendant wrote three checks totaling $30,000 to Co-Conspirator 1, Co-Conspirator 1's limited liability company, and another person at Co-Conspirator 1's direction.

k.  On December 11, 2020, Defendant submitted a false work invoice to ELNC for payment of $45,600 to her company Shared Blessings which falsely claimed she performed work under ELNC's contract for Technical Assistance for Social Change, and ELNC subsequently paid Defendant's company Shared Blessings for the false work invoice.  On December 11,

2020, Defendant wrote a check for $10,000 to another individual at Co-Conspirator 1's direction.

l.  On October 22, 2021, Defendant submitted a false work invoice to ELNC for payment of $35,000 and was subsequently paid by ELNC for the false work invoice.  Between October 2021 and November 2021, Defendant wrote checks totaling $19,000 to a company and another individual at Co-Conspirator 1's direction.

m.  In December 2021 Co-Conspirator 1 fraudulently caused ELNC to issue two $100,000 checks to a limited liability company.  Defendant knew the payments were fraudulent and that the limited liability company performed no work or services for ELNC and the preschools and programs it funded.  Defendant printed the checks at the request of Co-Conspirator 1.

n.  From in or about 2020 through in or about March 2023, Defendant knew that Co-Conspirator 1 fraudulently caused ELNC to issue hundreds of thousands of dollars in payments to individuals and companies that performed no work for ELNC or the preschools and programs it funded. Defendant knew the payments were fraudulent and she did not inform ELNC Board of Directors or ELNC's donors.

o.  In calendar years 2016-2023, ELNC received benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance.

Specifically, for each of those years, ELNC received more than $10,000 in Early Head Start federal grants from the U.S. Department of Health and Human Services.  The federal funds received by ELNC from the U.S. Department of Health and Human Services were property owned by, and under the care, custody, and control of, ELNC.

p.  In any one-year period during 2016-2023, the ELNC property that Defendant conspired to embezzle, steal, obtain by fraud, intentionally misapply, and otherwise without authority knowingly convert to her own use and the use of others was valued at $5,000 or more.

q.  Defendant knew that she had taxes due and owing each year for tax years 2014-2022, and also knew that she was legally obligated to file income tax returns for those tax years.  Defendant willfully attempted to evade and defeat income tax due and owing for tax years 2014-2022 by, among other things, creating false accounting records and grossly understating her taxable income on IRS Forms 1099.  Moreover, she did not file tax returns for tax years 2014-2022 until she was contacted by government agents about the investigation of her, even though she knew she had taxes due and owing for those years, and did not have income taxes withheld from her paycheck.  The government's position is that the amount of tax due and owing for tax years 2014-2022 is as follows:

| Tax Year | Tax Due and Owing |
|----------|-------------------|
| 2014     | $10,128.00        |
| 2015     | $20,660.00        |

| 2016 | $16,462.00 |
|---|---|
| 2017 | $52,571.00 |
| 2018 | $91,241.00 |
| 2019 | $34,203.00 |
| 2020 | $25,415.00 |
| 2021 | $11,959.00 |
| 2022 | $29,832.00 |
| | |
| Total | $292,471.00 |

  r. As part of the conspiracy with Co-Conspirator 1, Defendant agreed not to file IRS Forms 1099 for Co-Conspirator 1, Co-Conspirator 1's various companies, and Co-Conspirator 1's associates, so that the funds they embezzled from ELNC were not reported to the IRS as taxable income.

  8.  <u>Cooperation in Criminal Investigations</u>. Defendant agrees to fully cooperate with the United States Department of Health and Human Services, the IRS, the U.S. Attorney's Office, and any other law enforcement agency in their investigation of the charges contained in the Felony Information, as well as the investigation of crimes over which they have actual or apparent jurisdiction. Defendant's cooperation will consist of all steps needed to uncover and prosecute such crimes, including, but not limited to, providing investigators with a full, complete and truthful statement concerning Defendant's knowledge of any and all criminal activity of which she is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in Defendant's possession or under Defendant's control, including, but not limited to, objects, documents, and photographs. Defendant's obligation to cooperate under this

paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which Defendant should reasonably know will assist in the investigation of other criminal activity.  Defendant will not commit any criminal offense during the course of her cooperation with the United States. Defendant will submit to polygraph examination(s) upon request.  Defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in which Defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

9.    Acceptance of Responsibility.  The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of her offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1.   Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

10.    Protection for the Proffered/Cooperative Statements.    The U.S. Attorney's Office agrees that information provided by Defendant through Defendant's proffer(s), and any information provided pursuant to Defendant's promise to cooperate as described in this agreement, will not be used by the Government to enhance Defendant's sentence, in accordance with Sentencing Guidelines § 1B1.8,

and according to the terms of the written agreement entered into between the parties immediately prior to the proffer.  It is expressly understood, however, that such information may be used by the Government at sentencing if Defendant takes a position at sentencing that contradicts information provided by Defendant pursuant to this agreement or any proffer agreement.

11.   <u>Possibility of Sentence Reduction Motions</u>.   The U.S. Attorney's Office will decide whether to file a motion for departure or reduction of sentence pursuant to Sentencing Guidelines § 5K1.1 and/or Rule 35(b) of the Federal Rules of Criminal Procedure. Defendant fully understands that such a motion may be made pursuant to law if, and only if, Defendant fully cooperates with the Government and materially and substantially assists the Government in the investigation or prosecution of others.  The determinations of whether Defendant has provided substantial assistance to the United States, or to designated state or local law enforcement authorities, will be made in the sole discretion of the U.S. Attorney's Office.  Defendant fully understands that this paragraph is not a promise by the Government to file a motion for departure or to reduce a sentence.  Additionally, Defendant understands that, even if such a motion were filed, the Court has complete discretion to grant or deny the motion.  Furthermore, if the Court were to grant the motion, the Court, not the Government, would decide how much of a sentence reduction Defendant receives based upon the nature and extent of Defendant's assistance. Defendant acknowledges and agrees that Defendant may not appeal the

Court's exercise of its discretion in granting or denying a motion for departure or reduction of sentence, if such a motion is made.

12.    <u>The Sentencing Guidelines</u>.  Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant. Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.  Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement.   Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

13.    <u>Waiver of Constitutional Rights</u>.  By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court.  As a result of Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, Defendant would have had the following rights:

a.    The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

b.    The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

c.    The right to confront and cross-examine witnesses against Defendant.

d.    The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e.    The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

f.    By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

14.    <u>Waiver of Appellate Rights</u>. Defendant gives up her right to directly appeal her conviction, sentence, or any other matter relating to this prosecution on any ground, except as to claims that the sentence exceeds the statutory maximum.

15.    <u>FOIA Requests</u>. Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this

17

case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

16.    Hyde Waiver.  Defendant acknowledges, by her voluntary admissions of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and Defendant hereby disclaims and waives any right to make any claim for attorney fees.

17.    The Court is not a Party to this Agreement.  Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed.  Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw her guilty plea, and she will remain bound to fulfill all of her obligations under this agreement. Defendant understands that no one—not the prosecutor, Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

18.    This Agreement is Limited to the Parties.  This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority.  This agreement applies only to crimes committed by Defendant.  This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

19.   <u>Consequences of Breach</u>.  If Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement.  In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed.   In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant.  Defendant further agrees to waive and forever give up her right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

20.   <u>This is the Complete Agreement</u>.  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.  No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

21.   <u>Deadline for Acceptance of Agreement</u>.  If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by **6/12/2025**, this agreement will be withdrawn automatically and will

thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

6-12-25

_____
Date

ANDREW BYERLY BIRGE
Acting United States Attorney

_____
CLAY STIFFLER
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

6-12-25

_____
Date

_____
SHARON KAY KILLEBREW
Defendant

I am Sharon Kay Killebrew's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

6-12-25

_____
Date

_____
MARK DODGE
Attorney for Defendant